STATE OF IOWA ex rel. BEN J. GIBSON, Attorney-general, v. AMERICAN BONDING & CASUALTY COMPANY et al., Appellees; GUARANTEE FUND COMMISSION OF NEBRASKA, Appellant.

No. 41026.

OCTOBER 27, 1931.

F. E. Gill and Gill & Gill, for W. F. Grandy, Receiver, and American Bonding & Casualty Company, appellees.

J. T. Burke and Stewart & Hatfield, for appellant.

GRIMM, J.—The facts in this case are much involved, al-

though not much in dispute. It is likely that the battleground of the contestants will at the beginning be best understood if a chronological history is given.

On July 15, 1920, two suits were brought in the State Court of Nebraska by the American State Bank of Nebraska, located at Omaha, against M. F. Shafer & Company and Marion F. Shafer, to recover moneys loaned by the bank to these parties. It appears all the money was loaned for the benefit of the Company.

On November 3, 1920, a judgment was secured by said bank against Shafer & Company for $15,774.10 and against Marion F. Shafer, sometimes known as M. F. Shafer, in the amount of $10,561.43.

On November 9, 1920, executions were issued on the judgments of the bank against M. F. Shafer & Company and Marion F. Shafer.

On November 13, 1920, M. F. Shafer & Company, by certain of its officers, executed and delivered to The American Bonding & Casualty Company, a trust deed to Lot 5, Block 351, of the City of Omaha, Douglas County, Nebraska. This deed was to protect the bonding company from loss by reason of signing a stay bond on the Shafer judgments.

On November 19, 1920, stay bonds were filed in each of said cases with M. F. Shafer & Company as principal in one case and Marion F. Shafer as principal in the other and the American Bonding & Casualty Company as surety on each bond.

The stay bonds provided for the payment of each of said judgments within nine months from the date of the judgment, with interest and cost.

On January 1, 1921, the American State Bank became insolvent and a State Receiver was appointed. Within twenty days thereafter, and on January 21, 1921, M. F. Shafer & Company was adjudicated a bankrupt in the Federal District Court in Omaha and within three days thereafter, January 24, 1921, the American Bonding & Casualty Company went into the hands of a State Receiver in Woodbury County at Sioux City, Iowa. A few months thereafter and on or about October 24, 1921, the appellant, the Guarantee Fund Commission of the State of Nebraska, through its predecessor in interest, filed in the receivership of the American Bonding & Casualty Company at Sioux

City the two certain claims now in controversy, being known as claim No. 873 and claim No. 874. Claim No. 873 is for $15,774.10 with interest at 7% from October 3, 1920. Claim No. 874 is for $10,561.43, with interest at 7% per annum from November 3, 1920, and based on the judgments of the bank against the Shafers.

Objections were filed to the allowance of the claims by the receiver of the bonding company upon many grounds.

On February 6, 1923, the trustee in bankruptcy of the Shafer estate filed in the bankruptcy proceeding an application for authority to compromise claims of the American State Bank filed in said Shafer estate.

On March 24, 1923, the referee in bankruptcy entered an order in the Shafer estate, authorizing the trustee to consent to the allowance of the claim of the American State Bank in the sum of $24,000.00 as a general claim in compromise of the judgments obtained by the American State Bank against said bankrupt, prior to bankruptcy, then amounting to the sum of $35,816.23.

On March 26, 1923, a stipulation was filed in the Shafer bankruptcy proceedings, which stipulation was entered into between the receiver for the American State Bank and Mercer, the trustee in bankruptcy of the Shafer estate, stipulating that the claims of said American State Bank, filed in the bankruptcy might be compromised by the allowance of a general claim, in the sum of $24,000.00, in the Shafer estate, on consideration that the American State Bank dismiss its petition of intervention previously filed in the bankruptcy proceeding, by which petition of intervention the American State Bank sought to have its two judgments, previously referred to, declared a lien upon the fund created by the sale in bankruptcy of the real estate covered by the trust deed from the Shafer & Company to the American Bonding & Casualty Company.

On April 19, 1923, there was filed in the Shafer bankruptcy an application for a "show cause" order by Mercer, the trustee in bankruptcy, praying that an order be issued to the American Bonding & Casualty Company or its receiver, directing them to show cause why an order should not be entered declaring the trust deed from Shafer & Company to the bonding company null and void and barring the American Bonding & Casualty

Company and its receiver from all right to or claim in the funds then in court as the proceeds of the sale of the real estate covered by the trust deed previously mentioned. This order was served on the receiver of the American Bonding & Casualty Company on April 21, 1923.

On May 20, 1923, the referee in bankruptcy of the Shafer estate filed an order barring the claim of the American Bonding & Casualty Company to the proceeds of the sale of the real estate.

On July 28, 1927, the assets of the American State Bank, then in the hands of a receiver, were sold to the Guarantee Fund Commission of the State of Nebraska and on October 24, 1927, the sale was confirmed.

On March 1, 1929, claims No. 873 and No. 874 were referred to a referee by the District Court of Woodbury County and objections were filed to the allowance of the claims by the receiver of the American Bonding & Casualty Company.

On October 2, 1930, the District Court of Woodbury County, Iowa, confirmed the findings of fact and conclusions of law of the referee in reference to the said two claims. Thereafter, exceptions were filed to said findings and this appeal is based on the objections to said findings.

With this chronological chart before us, we may observe a few pertinent facts. When this trouble began, Shafer & Company owned a certain lot in Omaha, Nebraska, which afterwards was sold by the trustee in bankruptcy of the Shafer estate for $80,000.00. When the American State Bank of Nebraska, hereinafter for brevity called the "bank," secured its judgments, one against the Shafer Company and one against Marion F. Shafer of said company, the bank claimed it thereby secured, under the laws of the State of Nebraska, a lien on said real estate.

After executions were issued on these judgments, the Shafer estate evidently desired to delay the process of collection and negotiated with the American Bonding & Casualty Company, hereinafter for the sake of brevity called the "bonding company" for a stay bond to cover each of said judgments and in connection with said transaction and as security to the bonding company for its liability on the stay bonds, Shafers executed to the bonding company what is known as a "trust deed" on the

Omaha property, hereinbefore referred to as having later been sold by the trustee in bankruptcy of the Shafer estate, for $80,000.00.

The stay of execution was for a period of nine months. In less than sixty days thereafter, and following quickly on the heels thereof, came the bankruptcy of Shafer & Company and the insolvency of the bonding company. So far as this record shows, one of the main tangible assets involved in this complicated state of facts was the real estate in Omaha, the legal title to which was in Shafer and the trust deed to which was granted by Shafers to the bonding company and upon which the bank claimed a lien by reason of its said judgments.

As previously indicated, while these conditions obtained, the property was sold for $80,000.00 and the money retained in the Shafer bankruptcy. With this state of facts before them, the bank, through its receiver, was called upon to determine what action would be taken to collect the judgments against the Shafers. It was apparent that recovery from the bonding company was doubtful because it was in the hands of a receiver and in litigation. On the other hand, as against proceeding against the bonding company, the receiver of the bank had a remedy, to wit, collecting directly against the Shafers in the Shafer bankruptcy. The bank was claiming a lien on the Omaha property, or the proceeds thereof, by virtue of the bank's judgments against the Shafers and the bank, through its trustee, had open to it the privilege of filing a claim in the Shafer bankruptcy based upon the said judgments the bank had obtained against the Shafers. With these two avenues available, the one against the assets of the bonding company, the other against the assets of the Shafer Company, including the claimed lien on the real estate, the bank, through its receiver, chose to file its claim in the Shafer bankruptcy and by a petition of intervention in the Shafer bankruptcy.

We are unable to ascertain from the record just when this petition of intervention was filed, but the exact date is unimportant. Neither is there a copy of the petition set out in the record, but we gather therefrom that the petition was based upon the claim that the bank held valid liens against the Shafer real estate on account of its judgments and moreover, the bank also claimed, in said petition of intervention, the right to be

subrogated to the rights of the bonding company, which rights originated out of the trust deed executed by the Shafer Company to the bonding company, while the Shafer Company was still a going concern. While this petition of intervention was still on file and at issue and while the claim of the bank was filed in the Shafer bankruptcy, the latter claim being for $35,816.23, it appears that the receiver of the bank made an offer to the trustee in the Shafer bankruptcy whereby the said bank receiver sought to compromise its claims and each of them by securing in the Shafer bankruptcy the allowance of the claim of the bank, as a general claim, for $24,000.00.

It will be borne in mind that when this proposition was made by the bank receiver, most of the matters then under consideration were in dispute. For illustration, it was claimed that the trust deed to the bonding company was issued as an *ultra vires* act of the Shafer Company. Moreover, the trust deed was given within four months of the date of the adjudication of the bankruptcy of the Shafer Company.

The bonding company was in a complicated receivership. Grave doubts arose as to the value of the trust deed to the bonding company receivership. If the claims of the bonding company to the property were defeated, then the assets of the Shafer estate would be enhanced thereby. If the trustee in bankruptcy could clear the $80,000.00 of all claims of the bank, urged on account of its judgment liens and of all claims of the bonding company on account of its trust deed, it would be in a position to save much time, litigation and expense.

The referee reported that the bank might secure as a preferred claim a substantial portion of its $35,000.00 claim. The outcome of the bonding company receivership was apparently in doubt. The parties were confronted with expensive, long drawn-out and doubtful litigation. The petition of intervention of the bank asserted troublesome claims against the assets in the Shafer estate.

It was under such circumstances that the receiver of the bank made his proposition to the trustee of the Shafer bankruptcy whereby the said receiver proposed to receive and accept the allowance of a general claim for $24,000.00 against the assets of the Shafer bankruptcy estate in satisfaction of its claims.

The trustee in bankruptcy in the Shafer estate filed a re-

quest for authority to compromise on the basis of the offer made by the receiver of the bank. This request contained a very full recital of the history of the transaction up to that time, including the expression of opinion on the part of the trustee that the bank would probably secure, out of its $35,000.00 claim, a preferred claim against the $80,000.00 fund received for the sale of the Shafer real estate for some uncertain amount. The trustee requested as follows:

"That he be authorized to consent to the allowance of a general claim against said estate, on behalf of the said American State Bank, in the sum of Twenty-four Thousand Dollars ($24,000.00) in full settlement and compromise of all claims of every kind and nature now pending against said estate." (By the bank).

The trustee asked that the compromise be submitted to the creditors in due form and this was done. Thereafter, in due time, no creditors appearing to object, an order was issued by the referee which contains, among other things, the following:

"It is Ordered that said Trustee be, and he is hereby, authorized to consent to the allowance of said claim of the American State Bank in the sum of $24,000.00 as a general claim against the above entitled bankrupt estate (Shafer Company) in *compromise of judgments* obtained by said American State Bank against said Bankrupt in the sum of $35,816.23, with accrued interest." (Writer's italics.)

This order was dated March 24, 1923. On March 26, 1923, a stipulation executed by the receiver of the bank and Mercer, trustee of the Shafer bankruptcy estate, was filed. It is in words and figures, as follows:

"In the Matter of M. F. Shafer & Company, Bankrupt.
"No. 2321 Bankruptcy.          Stipulation.
"It is Hereby Stipulated and Agreed by and between Fred E. Bodie, Receiver for the American State Bank, claimant herein, and S. W. Mercer, Trustee, that the claims of the said American State Bank, heretofore filed herein, of every kind and nature whatsoever, may be compromised, pursuant to the approval of the Referee in Bankruptcy, by the allowance of a general claim in the sum of Twenty-four Thousand Dollars ($24,-

000.00) on behalf of said claimant, in consideration whereof the said American State Bank hereby dismisses its petition of intervention, heretofore filed herein, whereby it sought to have certain judgments declared a lien upon the fund created by the sale of real estate belonging to the bankrupt concern, and sought to be subrogated to the rights of the American Bonding & Casualty Company of Sioux City, Iowa.''

It will be noted that by the foregoing stipulation, the bank agreed to dismiss its petition of intervention whereby it was endeavoring to enforce what it claimed to be a lien of its judgments against the proceeds of the sale of the Omaha property and by which petition of intervention the bank asserted the right to be subrogated to the rights of the bonding company so that it (the bank), through its receiver, would get whatever advantage and benefit, if any, the bonding company had by reason of the trust deed hereinbefore referred to. In other words, in consideration for the allowance of the bankrupt claim as a general claim for $24,000.00 in the Shafer bankruptcy estate, the bank dismissed its petition of intervention and thereby released its claim to any lien on the Omaha real estate or the proceeds of the sale thereof and likewise relinquished any claims which it previously had asserted through and by virtue of the trust deed previously given to the bonding company on the Omaha property.

As bearing somewhat on the situation, it will be noted that the trustee in bankruptcy of the Shafer estate, in its application for an order to show cause why the bonding company should not be denied any interest in the Omaha property and proceeds thereof, stated among other things, as follows:

''Your trustee further shows, that it was provided by the terms of said trust deed that said property should be held as security to save the said American Bonding & Casualty Company harmless from any loss that it might sustain, by virtue of the execution of said stay bonds, in accordance with the terms of said trust deed, and in that connection your trustee alleges the fact to be, as he is informed and believes, that the said American Bonding & Casualty Company, or its receiver, has never suffered any loss on account of the execution of said stay bonds, and has never paid out any sums of money on account thereof, and the

said American Bonding & Casualty Company is now insolvent and unable to pay on account thereof, and in truth and in fact the said American Bonding & Casualty Company has not, and will not suffer any actual loss on account of the execution of said stay bonds. * * * That said proposed compromise was made after submission of the same to the creditors of the bankrupt estate, and an order was duly entered herein, in accordance therewith, allowing the said American State Bank a general claim in the sum of $24,000.00, in full settlement and compromise of all claims, of every kind and character, which the said American State Bank might have against said estate, and in that connection your trustee alleges the fact to be that said compromise constituted a full accord and satisfaction, in so far as the claim of the American State Bank was concerned in connection with any of the judgments hereinbefore referred to, and the same completely extinguished the debt, and there is no liability from the American Bonding & Casualty Company to the said American State Bank.''

Later, the order barring the claim of the bonding company in the proceeds of the sale of the real estate contained the following:

''That proposed compromise was made after submission of the same to the creditors of the bankrupt estate, and an order was duly entered herein, in accordance therewith, allowing the said American State Bank a general claim in the sum of Twenty-four Thousand Dollars ($24,000.00) in full settlement and compromise of all claims of every kind and character which the said American State Bank might have against said estate, and the Referee finds that said compromise constituted a full accord and satisfaction in so far as the claim of the American State Bank was concerned, in connection with any of the judgments heretofore referred to, and the same completely extinguishes the debt, and there is no liability from the American Bonding & Casualty Company to the said American State Bank on account of said stay bonds.''

Manifestly, the only basis for any liability against the bonding company lies in the judgments of the bank against the Shafers. The only obligation which the bonding company ever assumed was to pay these judgments. The Shafers were the

principals in that obligation and the bonding company only the surety. The payment of these judgments was the primary obligation of the Shafers. It necessarily follows that whenever the judgments are either paid in full, or compromised and settled in full, the liability of the bonding company ceases entirely.

Had the receiver of the bank merely filed its claim in the Shafer bankruptcy and collected a portion of the judgment only, as dividends, a different situation would have arisen. Here, faced with a very complicated state of affairs, the receiver of the bank saw fit to make a compromise settlement and adjustment of the bank judgments against the Shafer estate and the proposal was accepted. The receiver of the bank was accorded a general claim allowed in the sum of $24,000.00 against the assets of the Shafer bankruptcy and in consideration of the allowance of said claim in that amount the bank dismissed its petition of intervention in the bankruptcy and abandoned its claim of lien against the Omaha property either by virtue of the claimed lien under the judgments or by virtue of subrogation from the bonding company under its trust deed and, as we think, completely settled and satisfied the judgments of the bank against the Shafers. This conclusion is borne out by many parts of the record. Among them is the stipulation entered into in March, 1923, whereby the receiver of the bank joined in a written stipulation with the trustee in the Shafer bankruptcy, specifying "that the claims of the said American State Bank heretofore filed herein, of every kind and nature whatsoever, may be compromised, pursuant to the approval of the Referee in Bankruptcy, by the allowance of a general claim in the sum of Twenty-four Thousand Dollars ($24,000.00)," etc.

The claim of the bank therein referred to consisted of the two judgments. The record does not disclose that the bank had any other claim of any kind or character other than the two judgments. Therefore, by stipulation, the bank agreed to compromise the judgments in consideration of the allowance of the $24,000.00 claim. In the application by the trustee for authority to compromise, the trustee reported the offer, as follows:

"That your Trustee has received an offer of compromise from the Receiver representing the said American State Bank, offering to compromise said claims, and each of them, by accepting the allowance of a general claim of Twenty-four Thou-

sand Dollars ($24,000.00) against the said estate. * * * That your Trustee is of the opinion that it is for the best interests of all concerned that said offer of compromise be accepted, and that he be authorized to consent to the allowance of a general claim against said estate, on behalf of the said American State Bank, in the sum of Twenty-four Thousand Dollars, ($24,000.00) in full settlement and compromise of all claims of every kind and nature now pending against said estate.''

The order of March 24, 1923, contained this language:

''It is Ordered that said Trustee be, and he is hereby authorized to consent to the allowance of said claim of the American State Bank in the sum of $24,000.00 as a general claim against the above entitled bankrupt estate, in *compromise of judgments* obtained by said American State Bank against said Bankrupt in the sum of $35,816.23, with accrued interest.'' (Writer's italics.)

The trustee in bankruptcy manifestly desired and demanded a full settlement and cancellation of the judgments, for otherwise the bonding company might continue to force its claim under the trust deed, or to assert its rights, through the bank, of the alleged lien against the Omaha real estate by virtue of the judgments in favor of the bank against the Shafers. The receiver of the bank was evidently able to determine with reasonable accuracy how much would be paid on the general claim of $24,000.00, particularly if the $80,000.00, the proceeds of the sale of the Omaha property, was left intact and not disturbed by any claims of the bonding company.

It was under such circumstances that the receiver of the bank compromised and settled the judgments of the bank against the Shafers. The appellant, the Guarantee Fund Commission of the State of Nebraska, has no greater claim based upon said judgments than did the receiver of the bank.

The appellant calls attention to the fact that the bonding company made no response to the ''show cause'' order, hereinbefore referred to, served upon it by the trustee in bankruptcy. This was some time after the receiver of the bank had made its offer of compromise.

Upon the theory that the receiver was proposing to com-

pletely settle and satisfy the judgments the bank held against the Shafers, there was no reason why the bonding company should interfere with the completion of the proposed settlement. The receiver of the bonding company could well afford to stand by, fully advised of everything that was going on and permit the full compromise and settlement of the bank's judgments, because if the proceedings should finally be consummated and the judgments be settled, the bonding company would thereby be fully relieved.

The appellant confuses the situation with one which would arise if the receiver of the bank had only succeeded, in the regular course of bankruptcy, in collecting a portion of its judgment against the Shafers. That is quite a different thing from making an offer of compromise and settlement and having the same consummated.

The appellant, among other things, asserts that the discharge of a principal in bankruptcy will not release the surety, apparently upon the theory that the release of the Shafer estate by the bank, in bankruptcy, did not release the surety—the bonding company. The appellant cites in support of this theory Iowa Bonding & Casualty Company v. Wagner Company, 203 Iowa 179. An examination of this case discloses that it is not in point, but is an authority in support of the proposition that if the bank compromised and settled its judgments, there can be no liability against the bonding company. We quote the following from the opinion:

"It is urged by plaintiff that, even though the contract in question were effective to release Wagner (the principal), it does not follow that it is effective to release his indemnitors. * * * The fact that the discharge of a principal in bankruptcy does not operate to release a surety furnishes no ground for saying that a contractual release of a principal is likewise ineffective to release a surety. The law is well settled otherwise."

The foregoing is an answer to much of appellant's argument. We do not take the time or space to analyze the other authorities cited by appellant. On close examination, it will be found they are not in point when we consider that the judgments of the bank were released and compromised by the contract of the receiver of the bank.

After a very careful examination of the entire record and the authorities cited on behalf of both parties, we reach the conclusion that the lower court correctly approved and confirmed the findings of fact and conclusions of law of the referee, as follows:

"These claims should be disallowed, for the reason that the claims of the American State Bank have been fully compromised, settled, and the indebtedness upon which the claims are made extinguished. That the original judgments have been extinguished, and that the claimant has taken in lieu and in place thereof, a general claim against the bankrupt estate of M. F. Shafer & Co., and has received dividends thereon as hereinbefore set out."

It follows that the cause must be, and is,—Affirmed.

FAVILLE, C. J., and EVANS, DE GRAFF and WAGNER, JJ., concur.

KINDIG, J., takes no part.